UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE MAISANO,

    Plaintiff,                                           Hon. Janet T. Neff

v.                                                       Case No. 1:09 CV 99

RAYMOND GELABERT, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Summary Judgment, (dkt. #87), and Defendants' Motion for Summary Judgment, (dkt. #94). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be **denied**, Defendant's motion be **granted**, and this matter **terminated**.

## BACKGROUND

Plaintiff initiated this action on February 6, 2009, against Correctional Medical Services (CMS), Dr. Raymond Gelabert, and Patricia Merlau, R.N. The following allegations are contained in Plaintiff's amended complaint. (Dkt. #60). Plaintiff injured his lower back in 2001. Plaintiff was "examined and treated by various prison personnel" without success. Plaintiff began treating with Defendants in 2008.

Plaintiff continued to experience "constant back pain," as well as "deterioration of his spine, abdominal pain and Hepatitis C." Plaintiff's request that he "be referred to an outside specialist"

to "have both hip-joints replaced" was denied. Defendants also denied Plaintiff's request to participate in an MRI examination. Defendants have intentionally allowed Plaintiff's medications to expire "at one time or another." Plaintiff is missing several teeth which causes him to experience "terrible pain every time he eats." Nevertheless, Plaintiff has been denied "serious dental care." Plaintiff has also been denied treatment for Hepatitis-C. Despite suffering "agonizing pain" Defendants refuse to provide Plaintiff with "adequate pain medication." The "doctor" has often failed to renew Plaintiff's pain medications "for no apparent reason" and the "nursing staff ignores [Plaintiff] as if he were a nuisance and not a patient." Because Defendants have refused to provide Plaintiff with appropriate medical care, Plaintiff experiences "headaches all the time," as well as "permanent injuries" to his head, neck, lower spine, and legs.

Defendant CMS has failed to instruct, supervise, and train its employees and agents. Defendant CMS "employed physicians, and assistants, staff and other personnel who were unskilled, incompetent, unfit for such employment and were permitted. . .to attend, advise, diagnose and provide treatment to Plaintiff Maisano that was so cursory as to amount to no treatment at all." Defendant CMS also "failed to draft, promulgate, adapt, or enforce appropriate rules, regulations, policies, bylaws, orders, and constitutional provisions that could and should have prevented the acts and negligence committed against Plaintiff and that also could and should have prevented the injuries that Plaintiff suffered."

Plaintiff asserts that Defendants Gelabert, Merlau, and CMS violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff seeks more than one million dollars in damages. Plaintiff's claims against Defendant Merlau have since been dismissed. Defendants Gelabert and CMS now move for summary judgment. Plaintiff, likewise, has moved for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion

"is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Plaintiff's Claims Against Defendant Gelabert**

Plaintiff alleges that Defendant violated his Eighth Amendment rights by failing to properly treat his medical and dental impairments. Specifically, Plaintiff alleges that Defendant failed to properly treat his back and hip impairments. Plaintiff alleges that Defendant failed to provide him with adequate pain medication. Plaintiff alleges that he has not received proper treatment for Hepatitis C. Plaintiff also alleges that he has been denied appropriate dental care.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle*, 429 U.S. at 101-02. Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff must establish that the defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of his motion for summary judgment, Defendants have submitted copies of portions of Plaintiff's medical records. (Dkt. #95, Exhibit B). This evidence reveals the following.

On or about April 23, 2008, Plaintiff was transferred to the Florence Crance Correctional Facility (ACF). (Dkt. #95, Exhibit B at 792-93).[1] On June 12, 2008, Defendant Gelabert reviewed Plaintiff's medical records in response to complaints of hip and lower back pain. *Id.* at 763-64. Dr. Gelabert modified Plaintiff's medication regimen. *Id.* at 763-64. On July 17, 2008, Dr. Gelabert approved for Plaintiff the following special accommodations: (1) bottom bunk; (2) extra pillow; (3) padded insoles; and (4) cane. *Id.* at 753.

On or about August 31, 2008, Plaintiff submitted a health care request concerning the hip, leg, and groin pain he was experiencing. *Id.* at 735. On September 18, 2008, Plaintiff was examined by Dr. Gelabert. *Id.* at 724-26. Plaintiff reported that he was experiencing hip and back pain. *Id.* at 724. Plaintiff also reported that in 2006, an orthopedist recommended that he undergo a left hip replacement. *Id.* at 724. Plaintiff was paroled, however, before that could be accomplished. *Id.* at 724. Dr. Gelabert modified Plaintiff's medication regimen and authorized Plaintiff to receive an extra mattress. *Id.* at 725-26. The doctor also requested that Plaintiff be permitted to participate in a consultation examination to determine whether he required hip replacement. *Id.* at 713-14.

On October 3, 2008, Plaintiff was examined by Dr. Gelabert. *Id.* at 717, 719. Plaintiff reported that he was experiencing lumbar pain which "sometimes" radiated into his lower extremities. *Id.* at 717. Plaintiff reported that his medications were not providing good pain control. *Id.* at 717. The doctor offered to place Plaintiff on a "no work detail," but Plaintiff declined, opting to continue working his job picking up garbage in the yard. *Id.* at 717. Dr. Gelabert modified Plaintiff's medication regimen and approved an abdominal binding accommodation for Plaintiff. *Id.* at 717, 719.

On October 6, 2008, Dr. Gelabert's request that Plaintiff be permitted to participate in a consultation examination was denied on the ground that Plaintiff "does not meet medical necessity

---

[1] Citations to this particular exhibit refer to the identification numbers located in the lower right hand corner of each page.

criteria." *Id.* at 714.  Dr. Gelabert was instead directed to "continue conservative management" of Plaintiff's pain and consider referring the matter to the pain management committee. *Id.* at 714.  On October 8, 2008, Dr. Gelabert modified Plaintiff's medication regimen and decided to refer the matter to the pain management committee. *Id.* at 711.  On October 23, 2008, Dr. Gelabert performed an evaluation of Plaintiff's condition for the pain management committee and requested that Plaintiff receive a review by the committee within one month. *Id.* at 73, 81, 694-95.

On December 3, 2008, the pain management committee developed a treatment plan to manage Plaintiff's pain. *Id.* at 676, 692.  On December 5, 2008, Plaintiff was examined by Dr. Gelabert. *Id.* at 680, 682.  Plaintiff requested a Hepatitis C viral load test. *Id.* at 680.  Dr. Gelabert approved this request and additionally ordered that several other laboratory tests be completed. *Id.* at 682.  On January 7, 2009, after reviewing the results of these various tests, Dr. Gelabert ordered that Plaintiff undergo another liver enzyme test. *Id.* at 671.  Dr. Gelabert also indicated that he would complete a hepatitis C pre-treatment evaluation worksheet. *Id.*  On January 15, 2009, Dr. Gelabert completed the hepatitis C evaluation worksheet and indicated that Plaintiff would be referred to Dr. Craig Hutchinson for treatment of his hepatitis C. *Id.* at 665.

On February 3, 2009, Plaintiff was examined by Ardith Krizan, R.N. *Id.* at 639.  Plaintiff reported that he recently fell after which he began experiencing pain in the left side of his neck. *Id.* at 639.  Because was already receiving pain medication, the nurse instructed Plaintiff "in use of warm compresses several times a day." *Id.* at 639.  On February 17, 2009, Dr. Gelabert reported that Plaintiff was not exhibiting any signs of Hepatitis, but nonetheless requested that Plaintiff participate in another liver biopsy and be evaluated for interferon treatment. *Id.* at 85, 625-26.  In response, Dr. Hutchinson instead approved Plaintiff to participate in an ultrasound examination of his liver and spleen, an ultrasound-guided liver biopsy, and several laboratory tests. *Id.* at 622.

On March 2, 2009, Plaintiff was examined by Dr. Gelabert. *Id.* at 609. Plaintiff reported that he was experiencing hip and back pain. *Id.* at 609. The doctor ordered that Plaintiff participate in a series of x-rays of his lumbosacral spine. *Id.* at 609. On March 3, 2009, x-rays were taken of Plaintiff's lumbosacral spine. *Id.* at 154. These x-rays revealed that Plaintiff suffers from "degenerative arthritis" with "no evidence of acute osseous abnormality." *Id.* at 154.

On March 19, 2009, Plaintiff participated in an ultrasound examination of his spleen and liver, the results of which revealed "a mildly heterogeneous parenchymal echotexture" of the liver "possibly due to the given history of hepatitis." *Id.* at 71. Plaintiff's spleen was "unremarkable." *Id.* at 70. The results of a liver biopsy, performed the same day, revealed that Plaintiff was experiencing "chronic" Hepatitis C. *Id.* at 69.

On April 7, 2009, Plaintiff was examined by Dr. Gelabert. *Id.* at 585, 587. Plaintiff reported that he was experiencing back, hip, and neck pain. *Id.* at 585. The doctor observed that Plaintiff was able to get onto the examination table "w/o much difficulty" and could cross his legs "w/o sign of pain." *Id.* at 585. Plaintiff reported that his pain worsens after taking "long walks." *Id.* at 585. An examination of Plaintiff's neck revealed that his range of motion was "not impaired." *Id.* at 585. Plaintiff's medication regimen was modified. *Id.* at 585, 587.

Treatment notes dated April 28, 2009, reveal that Plaintiff "has been found cheeking Ultram [o]n several occasions." *Id.* at 568. In response, Dr. Gelabert indicated that Plaintiff's Ultram medication should in the future be crushed before it is given to Plaintiff. *Id.* at 568. On May 19, 2009, Plaintiff met with Dr. Gelabert to request that the doctor reverse his decision that his pain medication be crushed prior to administration. *Id.* at 554. Plaintiff asserted that "he never cheeked [his medication] and that crushing it doesn't give him the same effect." *Id.* at 554. Dr. Gelabert refused Plaintiff's request, noting that his decision was consistent with MDOC policy. *Id.* at 554.

On June 4, 2009, Plaintiff was examined by Dr. Gelabert. *Id.* at 534. The doctor reported that Plaintiff's "clinical appearance" was inconsistent with his report of extreme pain. *Id.* at 534. The doctor instructed Plaintiff to continue with the medication regimen approved by the pain management council. *Id.* at 534.

On June 11, 2009, Plaintiff was transferred to the Wayne County Jail regarding a different criminal matter. *Id.* at 529-33. Plaintiff returned to ACF on August 20, 2009, at which point Dr. Gelabert refilled "all [Plaintiff's] meds." *Id.* at 525, 527.

On September 14, 2009, Plaintiff was transferred to the Gus Harrison Correctional Facility (ARF). *Id.* at 507-10. On October 6, 2009, another care provider requested that Plaintiff be permitted to participate in an infectious disease consultation. *Id.* at 401-02. This request was approved and Plaintiff met with Dr. Craig Hutchinson on January 19, 2010. *Id.* at 379-80, 401-02. Dr. Hutchinson recommended a course of treatment for Plaintiff. *Id.* at 379-80. Plaintiff was released on parole eight days later. (Dkt. #95, Exhibit A).

Plaintiff has also submitted copies of portions of his medical record as exhibits to his amended complaint and his motion for summary judgment. (Dkt. #60, Exhibits B-E; Dkt. #88, Exhibits J-K, M-N). This evidence reveals the following.

On January 25, 2006, Plaintiff was examined by Dr. Raymond Allard. (Dkt. #88, Exhibit M at 11-12). Plaintiff reported that he was experiencing bilateral hip pain. *Id.* at 11. X-rays of Plaintiff's revealed "moderate to severe degenerative changes." *Id.* at 12. The doctor concluded that Plaintiff "would do well with" hip replacement surgery. *Id.*

On May 11, 2006, Plaintiff was examined by Dr. K. Nimr Ikram. *Id.* at 9-10). Plaintiff reported that he was experiencing progressively worse hip pain. *Id.* at 9. The doctor determined that Plaintiff was suffering from degenerative joint disease of the hips. *Id.* at 10. Dr. Ikram further

concluded that "the only way to get rid of some of the pain would be to have a hip replacement." *Id.* Plaintiff expressed his desire to undergo hip replacement surgery. *Id.*

On April 26, 2007, Plaintiff participated in an MRI of his lumbar spine, the results of which revealed degenerative disc disease. (Dkt. #88, Exhibit N at 16).

On August 11, 2008, Plaintiff requested that he be provided "more pain meds." (Dkt. #60, Exhibit B at 16). A nurse instructed Plaintiff that any increase in pain medication would have to be approved by the pain management committee and that the doctor "cannot just increase it automatically." *Id.* Treatment notes dated November 6, 2008, indicate that Dr. Gelabert's request that Plaintiff be examined by an orthopedic specialist "was not approved." *Id.* at 2.

X-rays of Plaintiff's right hip, taken on May 12, 2009, revealed "mild degenerative arthritis." (Dkt. #88, Exhibit M at 2).

On June 2, 2010, Plaintiff was examined by Dr. Joseph Finch. (Dkt. #88, Exhibit J at 2-4). Plaintiff reported that he was experiencing chronic hip pain. *Id.* at 2. X-rays of Plaintiff's hips revealed "severe" osteoarthritis. *Id.* at 5. The doctor concluded that "the best treatment option for [Plaintiff] would be surgical that includes hip replacement." *Id.* at 3.

This evidence reveals that Plaintiff's motion for summary judgment is without merit and that Defendant Gelabert is entitled to summary judgment.

First, while Plaintiff alleges that he was denied appropriate dental care, he has failed to submit evidence that during the relevant time period he was experiencing a serious need for dental care. Moreover, even if the Court assumes that Plaintiff was experiencing a serious need for dental care, Plaintiff has failed to present any evidence that Defendant Gelabert was aware of such.

As for Plaintiff's claims regarding his back and hips, the evidence reveals that Plaintiff experienced a serious medical need. The evidence also reveals, however, that Defendant Gelabert was

not deliberately indifferent to such. Defendant Gelabert treated Plaintiff with medications and various accommodations. Gelabert also recommended that Plaintiff be examined by a specialist to determine whether Plaintiff required hip replacement surgery. While this request was denied, such does not indicate that Defendant Gelabert was indifferent to Plaintiff's condition. Defendant Gelabert also worked with the pain management committee to develop a treatment plan to manage Plaintiff's pain. As for Plaintiff's complaint that he was not given sufficient pain medication, the evidence submitted by Plaintiff reveals that increases in Plaintiff's pain medication had to be approved by the Pain Management Council, as Defendant Gelabert lacked the authority to increase such on his own. Thus, there is no evidence that Defendant Gelabert was indifferent to Plaintiff's desire for increased pain medication.

Finally, with respect to Plaintiff's hepatitis C the evidence again reveals that Defendant was not deliberately indifferent to Plaintiff's condition. Plaintiff requested a hepatitis C viral load test in December 2008. Defendant Gelabert approved this request and also ordered that additional laboratory tests be conducted. After reviewing the results of these various tests, Defendant Gelabert ordered that Plaintiff undergo a liver enzyme test. Defendant Gelabert subsequently recommended that Plaintiff undergo a liver biopsy and be evaluated for interferon treatment. Dr. Hutchinson did not approve this request, but instead instructed that Plaintiff participate in an ultrasound examination of his liver and spleen, an ultrasound-guided liver biopsy, and several laboratory tests. Plaintiff was later transferred to another facility, after which he was examined by Dr. Hutchinson regarding his hepatitis C diagnosis.

While Plaintiff may disagree with Defendant Gelabert's treatment decisions or believe that he received negligent care, such does not implicate the Eighth Amendment. As discussed above, the evidence reveals that Defendant Gelabert was not deliberately indifferent to Plaintiff's various ailments. Instead, Defendant Gelabert provided Plaintiff with reasonable medical treatment.

Accordingly, the undersigned recommends that Plaintiff's motion for summary judgment be denied as to his claims against Defendant Gelabert and, furthermore, that Defendant Gelabert's motion for summary judgment be granted.

**II.        Plaintiff's Claims Against CMS**

Plaintiff alleges that Defendant CMS violated his Eighth Amendment rights by failing to properly treat his medical and dental impairments. Plaintiff also alleges that CMS failed to properly instruct, supervise, and train its employees and agents.

CMS is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001). To establish liability against CMS, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a CMS policy, practice, or custom. *See Thomas*, 398 F.3d at 429.

To establish the existence of a policy, practice, or custom, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that CMS had notice or constructive notice of such; (3) that CMS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation. *Id.* at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).

As Defendant correctly asserts, Plaintiff has failed to present evidence from which a reasonable juror could find that Plaintiff suffered a violation of his federal rights "because of" a CMS policy, practice, or custom. Accordingly, the undersigned recommends that Plaintiff's motion for summary judgment be denied as to his claims against Defendant CMS and, furthermore, that Defendant CMS's motion for summary judgment be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, (dkt. #87), be **denied**; Defendants' Motion for Summary Judgment, (dkt. #94), be **granted**; and this matter **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  June 27, 2011                                    /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge